# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 09-40071-02-JAR |
| ) | |
| **RALFEAL ERON CARR,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER
## ON MOTION TO RECONSIDER SUPPRESSION

This matter comes before the Court on defendant Ralfeal Eron Carr's Motion to Reconsider Suppression (Doc. 55), which was filed in response to the Court's January 5, 2010 Memorandum and Order ("Order") denying defendants' motions to suppress (Doc. 41).

Defendant Carr and co-defendant Dennis Dean Neff have been charged with conspiracy to distribute and possess with intent to distribute approximately seven kilograms of a substance containing cocaine hydrochloride, in violation of 21 U.S.C. § 846; and knowingly and intentionally possessing with intent to distribute approximately seven kilograms of a substance containing cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1).

Prior to the present motion to reconsider, defendant Carr and co-defendant Neff filed separate motions to suppress, raising various arguments. Defendant Carr argued that the warrantless search of the car was unreasonable because (1) neither the owner nor the driver gave permission to search the vehicle; and (2) no one was under arrest at the time Trooper Brian K. Smith conducted the search, thus, the search was not a valid search incident to arrest. Defendant Neff argued that (1) Trooper Smith did not have reasonable articulable suspicion of criminal

activity to justify the initial stop; (2) the patdown search was unlawful because there was no reasonable suspicion to believe defendants were armed and dangerous; and (3) the search of the vehicle was an invalid search incident to arrest because no one was arrested at the time of the search. Defendants contended that the evidence discovered in the vehicle was fruit of the poisonous tree.

The Court held an evidentiary hearing on December 7, 2009. The parties presented evidence and oral argument. The government stipulated that defendant Carr was a co-owner of the Monte Carlo driven by defendants on July 31, 2009. The government stated that it was withdrawing all arguments regarding standing and clarified that it was not relying on the search incident to arrest exception, but was basing the search on the automobile exception. After considering all the evidence and the parties' submissions, the Court analyzed both defendants' arguments for suppression, and denied both motions. The Court now has before it, defendant Carr's Motion to Reconsider.

The standard for motions to reconsider in criminal cases is well established.

> Rarely do parties in criminal proceedings file motions to reconsider rulings on pretrial motions. This court believes that the standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case. "A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3. "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. General Motors Corp.,* 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd,* 43 F.3d 1484, 1994 WL 708220 (10th Cir. Dec.21, 1994) (Table).
>
> A court's rulings "are not intended as first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting v. Gulfco Industries, Inc.,* 123 F.R.D. 282, 288 (N.D. Ill.

> 1988). A motion to reconsider is appropriate if the court has
> obviously misapprehended a party's position, the facts, or
> applicable law, or if the party produces new evidence that could
> not have been obtained through the exercise of due diligence.
> *Comeau v. Rupp,* 810 F. Supp. 1172, 1175 (D. Kan.1992); *see
> Refrigeration Sales Co. Inc. v. Mitchell-Jackson, Inc.,* 605 F. Supp.
> 6, 7 (N.D. Ill. 1983), *aff'd,* 770 F.2d 98 (7th Cir. 1985). A motion
> to reconsider is not appropriate if the movant only wants the court
> to revisit issues already addressed or to hear new arguments or
> supporting facts that could have been presented originally.
> *Comeau v. Rupp,* 810 F. Supp. at 1175[;] *Koch v. Koch Industries,
> Inc.,* 6 F. Supp. 2d 1207, 1209 (D. Kan. 1998). The decision
> whether to grant or deny a motion to reconsider is committed to
> the court's sound discretion. *Hancock v. City of Oklahoma City,*
> 857 F.2d 1394, 1395 (10th Cir.1988).[1]

Defendant Carr has not met this standard. He has not presented any new facts, pointed the Court to a change in Tenth Circuit precedent or constitutional law, or alleged circumstances showing clear error or manifest injustice resulting from the Court's ruling. In his motion to reconsider, defendant has renewed many of the arguments previously raised by both defendants and analyzed by this Court in its original Order. Defendant presently argues: (1) the drug checkpoint violated the Fourth Amendment because its purpose was "general crime control," and it permitted officers to stop drivers without an individualized suspicion of criminal wrongdoing; (2) the search exceeded the search incident to arrest exception because no one was arrested at the time of the search, there was no reason to believe the occupants were armed or dangerous, and the search exceeded both the purpose of the arrest and the scope of the search-incident-to-arrest exception; and (3) Trooper Smith's discovery of a crack pipe on defendant Neff's person did not justify extending the search to the trunk of the vehicle under the automobile exception. All of these arguments, with the exception of the "checkpoint" argument, were addressed in the Court's

---

[1] *United States v. Carr*, No. 06-40147-SAC, 2007 WL 1989427, at *1 (D. Kan. June 20, 2006) (citing *United States v. D'Armond*, 80 F. Supp. 2d 1157, 1170–71 (D. Kan. 1999)).

original Order. Rather than reiterate the facts, law, and analysis of the Court's earlier decision, the Court incorporates by reference its analysis of these arguments renewed by defendant in his present motion to reconsider.

Defendant Carr raises one new argument, not previously addressed by either defendant: that the ruse checkpoint created by the police officers in this case violated defendant's Fourth and Fifth Amendment rights because its primary purpose was merely to advance a general interest in crime control.

The Court is not required to consider new arguments that could have been presented originally.[2] Nevertheless, having considered this argument, the Court finds it is without merit. Defendant argues that the Trooper Smith's suspicion of criminal wrongdoing came about by the officers' own unlawful means: the use of an unlawful checkpoint. Defendant cites to *City of Indianapolis v. Edmond*,[3] and argues that, if a checkpoint's primary purpose is indistinguishable from a general interest in crime control, the checkpoint violates the Fourth Amendment. He argues that the search and seizure in this case were unlawful because they were not based on an individualized suspicion of wrongdoing or supported by specific, objective facts.

The Court has reviewed the cases cited by defendant, and finds that his arguments are based on a misunderstanding of the facts in *this* case. Although the Supreme Court has certainly held that police officers cannot stop vehicles without some individualized suspicion of criminal

---

[2]*Koch v. Koch Indus., Inc.*, 6 F. Supp. 2d 1207, 1209 (D. Kan. 1998).

[3]531 U.S. 32 (2000).

wrongdoing in the hope that a brief interrogation will reveal criminal conduct,[4] that is not the case here. Trooper Smith developed a reasonable articulable suspicion of individualized criminal activity *before* he stopped defendants. More importantly, unlike the facts in the cases cited by defendant, there was no checkpoint in this case. Police officers erected signs for a checkpoint, but not a single driver was stopped as part of an actual checkpoint investigation. Thus, defendant's references to case law applying the Fourth Amendment to police checkpoints is inapposite.

Rather, the Tenth Circuit has made its holding clear with regard to police officers' use of ruse checkpoints. In *United States v. Flynn*,[5] the defendant raised a Fourth Amendment argument similar to the one raised by defendant Carr in the present case. Flynn was driving on the interstate when he passed a sign that read, "Drug Checkpoint 1/3 mile ahead."[6] Immediately thereafter, he saw another sign reading, "Drug Dogs in Use," and noticed a police car parked on the highway with its lights on.[7] At this point, Flynn "made an abrupt lane change and immediately took the exit ramp for Ross Road."[8] When he reached the top of the exit ramp, the passenger door opened and the passenger discarded a large sack containing methamphetamine.[9] Officers "hidden in the underbrush near the top of the exit ramp . . . emerged from the

---

[4]*City of Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000) ("We cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime.").

[5]309 F.3d 736 (10th Cir. 2002).

[6]*Id.* at 737.

[7]*Id.*

[8]*Id.*

[9]*Id.*

5

underbrush, examined the sack," and after determining it contained drugs, stopped Mr. Flynn and placed him under arrest.[10] In support of his motion to suppress, Flynn argued, based on *City of Indianapolis v. Edmond*,[11] that the drug checkpoint erected by the police violated the Fourth Amendment. The Tenth Circuit found it did not:

> This reliance [on *City of Indianapolis*] is misplaced. Mr. Flynn never reached a drug checkpoint. He discarded the property prior to being stopped by the police. Up to that moment, he acted voluntarily in response to a ruse established by the police (i.e. the signs warning of a fictitious checkpoint on I-40). The posting of signs to create a ruse does not constitute illegal police activity. *See* [*United States v.*] *Klinginsmith*, 25 F.3d [1507,] at 1508 [(10th Cir. 1994)]. In fact, had Mr. Flynn continued driving eastbound on I-40, he would never have been stopped because the checkpoint warned of by the signs did not exist. Even the police car ahead on I-40 was unoccupied. The officers put up the signs only as a ruse to observe suspicious behavior by those who might take the nearest exit after seeing the signs.
>
> Mr. Flynn claims the officers waiting in a car on Ross Road, under the I-40 overpass, were operating an illegal drug checkpoint. The legality (or even the existence) of a checkpoint on Ross Road, however, is irrelevant, as other officers stopped Mr. Flynn before he turned onto Ross Road. The creation of a ruse to cause the defendant to abandon an item is not illegal. *See id.* (approving implicitly a nearly identical ruse). . . . The police may stop a car when they have developed a reasonable individualized suspicion of wrongdoing. *City of Indianapolis*, 531 U.S. at 37, 121 S. Ct. 447.[12]

Generally, the Tenth Circuit has upheld police officers' use of a ruse checkpoint in cases where the officers did not stop anyone until they observed or otherwise had "reasonable

---

[10]*Id.*

[11]531 U.S. 32 (2000).

[12]*Flynn*, 309 F.3d at 738–39.

6

suspicion of some type of illegal activity associated with a particular vehicle."[13]  As recently as 2006, the Tenth Circuit reviewed its holding in *Flynn* and reiterated that the use of a ruse checkpoint under similar circumstances "was entirely legal."[14]  In *United States v. Ojeda-Ramos*,[15] the Tenth Circuit explained the import of *Flynn*: "In *Flynn*, the police misrepresented the facts in order to observe motorist reaction to the misinformation. . . . A ruse by law enforcement officers to influence behavior is not prohibited unless it is unconstitutional. . . . Speculation about whether [a defendant] might have behaved differently absent the ruse does not inform the debate."[16]

In *United States v. Klinginsmith*,[17] the Tenth Circuit held that an unexplained, evasive response to a ruse checklane, in light of other facts and circumstances, may create a reasonable, articulable suspicion of criminal activity.[18]  In *Klinginsmith*, the defendants were traveling Interstate 35 on their way through Kansas in a car bearing Nebraska license plates.[19]  They drove past a sign reading, "NARCOTICS CHECK LANE AHEAD," and the driver immediately took

---

[13] *See Roth v. Green*, 466 F.3d 1179, 1183 (10th Cir. 2006); *see also United States v. Bravo*, 306 F. App'x 436 n.2 (10th Cir. 2009) (noting that even though a roving drug checkpoint intended to uncover evidence of ordinary criminal wrongdoing without individualized suspicious is unconstitutional, a stop that *is* based on individualized suspicion is constitutional).

[14] *Roth*, 466 F.3d at 1189 ("If there were any doubts about the legality of the ruse utilized by defendants in this case (and it appears that, even prior to Flynn, the legality of such a ruse was clear), those doubts should have ceased when we issued *Flynn*.").

[15] 455 F.3d 1178 (10th Cir. 2006).

[16] *Id.* at 1182, 1184, 1185 (internal citations omitted).

[17] 25 F.3d 1507 (10th Cir. 1994).

[18] *Id.* at 1509–10.  The Tenth Circuit noted that, "even if it was an investigative detention, it was supported by reasonable, articulable suspicion under the *Terry*-stop doctrine."  *Id.*

[19] *Id.* at 1508–09.

the next rural exit to a "small hamlet in Osage County, Kansas," and "proceed[ed] south on a gravel frontage road at a high rate of speed" until he reached a gas station, where he stopped.[20] Officers followed them to the gas station to investigate. After engaging them with various questions and a drug dog sniff of the vehicle, marijuana was discovered in the trunk and the occupants were arrested.[21] The district court found the encounter at the gas station was not a seizure, but was instead, a consensual encounter.[22] And, under the totality of the circumstances, the facts leading up to the encounter at the gas station created a reasonable suspicion of criminal activity justifying an investigative detention. The Tenth Circuit agreed.[23]

Similarly, the fictitious drug checkpoint in this case did not violate defendant Carr's rights under the Fourth Amendment because the stop of his car was, as this Court has explained, based on the Trooper Smith's individualized suspicion of criminal activity. In determining the presence of a reasonable suspicion justifying an investigative detention, the court "defer[s] to the ability of a trained law enforcement officer to distinguish between innocent and suspicious

---

[20]*Id.*

[21]*Id.* at 1509.

[22]*Id.* at 1509–10.

[23]*Id.* at 1510 ("The questioning of each regarding license, car registration, and the like is permitted . . . where there is, as in the instant case, reasonable suspicion of criminal activity."). The district court identified several factors warranting the detention, which the Tenth Circuit summarized as follows:

> (1) I-35 is a known avenue for drug transportation; (2) the defendants took an exit which was the first exit after a narcotics check lane sign, and an exit that was seldom used; (3) the defendants traveled down an unmarked gravel road; (4) the driver of the car indicated that they were looking for a gas station, when they had just passed several gas stations on the highway; (5) the defendants appeared very nervous; and (6) they gave conflicting stories about the details of their trip.

*Id.* at 1510 n.1.

8

actions."[24] If reasonable, articulable suspicion of criminal activity exists, a law enforcement officer has authority to effect a limited investigatory detention "in order to determine [the person's] identity or to maintain the status quo momentarily while obtaining more information."[25] In the Court's Order, it made detailed findings that, under the totality of the circumstances, the objective facts identified by Trooper Smith, preceding the traffic stop, supported a finding of reasonable articulable suspicion of criminal wrongdoing.[26] Defendants drove past a clearly marked sign notifying drivers of an upcoming drug check; immediately after passing the sign, the driver took the first available exit which led to a rural gravel road where no businesses were located for miles. The road accessed various country residences in Wabaunsee County, but Trooper Smith noted that the car belonged to an individual from Shawnee County. The car did not loop back onto the Interstate at the first available opportunity, nor did it turn around in the first available private driveway. When the driver pulled into a private residential driveway, he turned in his seat and noticed the Trooper behind him. The driver gave a startled expression, backed out of the driveway, and turned back toward the Interstate. The Court found that,

> Based on his extensive training and experience in drug interdiction, Trooper Smith's good faith observations on July 31, 2009, were sufficient under the totality of the circumstances to rise to the level of "reasonable suspicion" that the driver and occupants were evading the drug check lane or attempting to avoid Trooper Smith because they were engaged in illegal activity, whether it was the transport of drugs or casing houses for a possible burglary, as

---

[24]*United States v. Santio*, No. 08-4216, 2009 WL 3526502, at *4 (10th Cir. Oct. 30, 2009) (quoting *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001)).

[25]*United States v. Lambert*, 351 F. Supp. 2d 1154, 1160 (D. Kan. 2004) (citations omitted).

[26](Doc. 41 at 10-12) (footnotes omitted).

9

> Trooper Smith originally suspected. . . . such uncertain driving
> patterns immediately after passing signs indicating a drug check,
> and the driver's nervous reaction upon seeing a marked patrol car,
> were sufficient to establish reasonable suspicion for a short
> investigatory detention.

The driver made the voluntary decision to pull into a private residential driveway, and the Trooper stopped him after he backed out of the drive. Rural Wabaunsee may not necessarily be a "high crime" area, yet the ruse checklane created a scenario in which a driver's evasive response to police and uncertain driving patterns could be considered a suspicious factor.[27]

Although Trooper Smith may have considered multiple scenarios of criminal wrongdoing, which would have justified an investigatory detention (e.g., the possibility that they were casing houses for a burglary or evading police because of drug possession), the objective facts proffered by the government support a reasonable, articulable suspicion that the occupants of the vehicle were engaged in illegal *drug* activity – most importantly, that defendants were evading an alleged *drug* checkpoint and the officers associated with that checkpoint. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' The officer's subjective motivation is irrelevant."[28] "[I]n justifying the particular intrusion the police officer must be able

---

[27]*See Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000) ("In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); *see also United States v. Flores*, No. 06-40059-02-RDR, 2006 WL 2264840, at *4 (D. Kan. Aug. 8, 2006) (holding that defendant's decision to exit the Interstate onto a rural road just after passing signs indicating a drug check lane ahead supported deputy sheriff's reasonable suspicion of illegal activity); *United States v. Lambert*, 351 F. Supp. 2d 1154, 1160–61 (D. Kan. 2004) (holding that highway patrol trooper had reasonable suspicion for investigatory detention of defendant where it was reasonable to infer that defendant took highway exit to avoid what he believed was drug check lane ahead).

[28]*Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (emphasis in original) (internal citations omitted); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers").

to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[29] Trooper Smith had extensive experience with drug interdiction work.[30] After reviewing the facts for the Court at the suppression hearing, Trooper Smith stated that it appeared the driver might have been involved with drugs.[31] This Court found that the facts available to the Trooper at the moment of the seizure, when viewed objectively, supported a reasonable articulable suspicion that defendants were engaged in a drug crime.[32] In the end, "the level of suspicion required for reasonable suspicion is 'considerably less' than proof by a preponderance of the evidence or that required for probable cause."[33] The facts of this case "warrant[ed] a man of reasonable caution in the belief that the action taken was appropriate."[34]

Defendant also argues that the ruse checkpoint violated his Fifth Amendment right against compulsory self-incrimination because "[t]he scheme behind the drug search and seizure signs prompts motorists to reveal criminal activity which thus forces motorist[s] to incriminate and be a witness against self within the meaning of the Fifth Amendment."[35] The Fifth

---

[29] *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

[30] (Doc. 41 at 2.)

[31] *Id.* at 3.

[32] *See* Doc. 41 at 14 ("The driver appeared to be avoiding a drug check lane, raising an inference that he might be carrying drugs. . . . Furthermore, there was reasonable suspicion to believe the defendants were engaged in drug dealing, a crime often accompanied by firearms and violence."), at 24 ("Trooper Smith stopped the car on the articulable, reasonable suspicion that it was avoiding a drug check lane, allowing for a reasonable inference that the occupants may be involved in drug crimes.").

[33] *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citations omitted).

[34] *Terry*, 392 U.S. at 22 (internal quotation marks omitted).

[35] (Doc. 55 at 5–6.)

Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[36] To receive the protection of the Fifth Amendment, a person's statement or act must be compelled, must be testimonial, and must incriminate the person in a criminal proceeding.[37] The privilege only attaches to "testimonial compulsion and does not attach to demonstrative, physical or real evidence."[38]

Here, defendant Carr has not shown that his conduct was compelled. As the Tenth Circuit noted in *Flynn*, a driver's reaction to a ruse checkpoint is voluntary.[39] If defendants Carr and Neff proceeded down the interstate, they would have discovered there was no checkpoint. A driver's *voluntary* response to a ruse checkpoint is not a seizure under the Fourth Amendment;[40] nor is it the result of government compulsion.[41] Defendant has not shown that his Fifth Amendment right against self-incrimination was implicated or violated in this case.

Next, defendant argues the search of the vehicle was not a valid search incident to arrest.

---

[36]U.S. CONST. amend. V.

[37]*United States v. Hubbell*, 530 U.S. 27, 34–35 (2000); *see* 38 GEO. L.J. ANN. REV. CRIM. PROC. 616 (2009).

[38]*United States v. Delaplane*, 778 F.2d 570, 575 (10th Cir. 1985) (citations omitted); *see also United States v. Holloway*, 906 F. Supp. 1437, 1443 (D. Kan. 1995) (collecting cases in which Fifth Amendment right against self-incrimination did not attach).

[39]309 F.3d 736, 738 (10th Cir. 2002).

[40]*United States v. Klinginsmith*, 25 F.3d 1507, 1510 (10th Cir. 1994).

[41]*See Illinois v. Perkins*, 496 U.S. 292 (1990) (holding that the officer's effort to make a prisoner believe the officer was "a sympathetic colleague" by posing as a fellow inmate did not make the prisoner's statements involuntary and did not violate the Self-Incrimination Clause); *South Dakota v. Neville*, 459 U.S. 553, 561–64 (1983) (finding no Fifth Amendment violation when court admitted defendant's refusal to take blood-alcohol test because there was no impermissible coercion). In *Neville*, the Supreme Court explained that, if the only alternative was to "submit to a test so painful, dangerous, or severe, or so violative of religious beliefs, that almost inevitably a person would prefer 'confession,'" the Fifth Amendment may bar the use of such testimony. 459 U.S. at 563 (citing *Schmerber v. California*, 384 U.S. 757, 765 n.9 (1966)). However, that was not the case here, as there was no checkpoint at all.

The government has repeatedly asserted that it is not relying on the search incident to arrest exception, but rather, on the automobile exception.[42] Therefore, the Court sees no reason to address this part of defendant's argument.

Finally, defendant renews the argument that the officers' search of the trunk exceeded the scope of the automobile exception under Tenth Circuit precedent. However, the Court addressed this argument thoroughly in its original Order, wherein it reviewed the import of Tenth Circuit cases cited by defendant in his Motion to Reconsider.[43] The Tenth Circuit has distinguished between "personal use" and "drug trafficking" as a justification to limit a search under the automobile exception in situations where an officer only smells *burnt* marijuana but has absolutely no corroborating evidence that the vehicle contains evidence of drug crimes.[44] The Tenth Circuit made this distinction because the smell of burnt marijuana is more indicative of recent use, not present possession. The distinction between "use" and "trafficking" has been rejected in situations where actual drugs are found in the passenger compartment, even in small portions.[45] If defendants were able to circumvent a search of the trunk *merely* by producing a small amount of drugs and claiming that it was for "personal use," the automobile exception would never reach the trunk, and drug traffickers would utilize the trunk for all contraband.[46]

---

[42](Doc. 29 at 19–20); (Doc. 56 at 5.)

[43](Doc. 41 at 19–22 & nn.56, 57, 61, 62.)

[44]*United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998); *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993).

[45]*See Nielsen*, 9 F.3d at 1490; *United States v. Loucks*, 806 F.2d 208, 210–11 (10th Cir. 1986) (discussing *United States v. Burnett*, 791 F.2d 64 (6th Cir. 1986), and finding defendant's "personal use" argument to be "illogical and unreasonable").

[46]*See United States v. Bradford*, 423 F.3d 1149, 1159–60 (10th Cir. 2005).

Regardless of the amount of drugs believed to be in a suspect's possession, the Tenth Circuit has consistently held that either (1) the smell of raw marijuana or (2) a drug dog's alert to drugs are independently sufficient to establish probable cause for a search of the entire vehicle.[47] Furthermore, the Order noted that "[c]ourts have generally treated the visible, physical presence of drug paraphernalia as much stronger evidence establishing probable cause to believe that evidence of drug crimes is present in the vehicle."[48]

In this case, the driver of the car, co-defendant Neff, had possession of a crack pipe containing burnt residue. Hypothetically, if Trooper Smith only smelled burnt marijuana on Neff's person with no other tangible corroborating evidence, his search of the vehicle would have been limited to the passenger compartment, in part, because there would have been no evidence to corroborate whether Neff recently ingested drugs or was merely near someone who ingested drugs. In contrast, Neff actually produced a crack pipe with *residue* on it. This justified a reasonably inference that Neff had ingested drugs. In fact, Trooper Smith testified that, based on his training and experience, where there was drug paraphernalia, there would be drugs as well.[49]

But this was not the only fact the Court considered when it concluded that there was a fair probability that the vehicle contained other evidence of drug crimes. The Court looked at the totality of the circumstances "leading up to, and including, the search of the passenger compartment," before it found "that there was probable cause to search the entire vehicle for

---

[47]*United States v. Vasquez-Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001) (raw marijuana); *United States v. Stewart*, 473 F.3d 1265, 1270 (10th Cir. 2007) (drug dog alert).

[48](Doc. 41 at 20, 21–24 & nn.61, 62, 79, 83, 84.)

[49]*Id.* at 5.

14

evidence of drug crimes."[50] When the crack pipe with burnt residue was considered in combination with other facts, Trooper Smith had probable cause to believe the car contained evidence of a drug crime. Thus, he was permitted, under the automobile exception, to search the entire car and its contents for evidence of drug crimes.[51]

Defendant Carr has not produced any new evidence or case law contradicting the Court's original findings. Thus, the Court upholds its prior decision and reasoning, and overrules defendant's Motion to Reconsider.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Reconsider Suppression (Doc. 55) is DENIED.

**IT IS SO ORDERED.**

Dated: <u>April 5, 2010</u>

<u> S/ Julie A. Robinson </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[50] *Id.* at 25.

[51] *Id.* at 24–25.